IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1737-WJM-SKC

CRAIG ALSPAUGH,

    Plaintiff,

v.

FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota insurance company,

    Defendant.

**ORDER GRANTING DEFENDANT'S EARLY MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Federated Mutual Insurance Company's Early Motion for Summary Judgment ("Motion"). (ECF No. 29.) Plaintiff Craig Alspaugh filed a response. (ECF No. 32.) Defendant filed a reply. (ECF No. 35.) For the following reasons, the Motion is granted.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

On July 30, 2018, Plaintiff was employed as a sales representative by McDonald Automotive Group ("MAG"), a car dealership in Lakewood, Colorado.  On that day, Clayton Hollingshead, a customer of MAG, was being assisted by Plaintiff and was given permission to test drive a 2016 Mazda CX-5 owned by MAG.  During the test drive, the Mazda CX-5 collided with a Jeep Cherokee.

By letter dated November 16, 2018, Defendant advised Plaintiff that Hollingshead was not an insured under its policy.  By letter dated December 20, 2019, Defendant's attorneys reiterated its coverage position that Hollingshead was not an insured under Defendant's policy.

On November 13, 2020, Plaintiff filed a Complaint against Hollingshead in the District Court for Denver County, Case No. 2020CV33880 ("Underlying Lawsuit").  At the time of the accident, Hollingshead was insured under a personal auto policy issued by Progressive Insurance Company ("Progressive") with a bodily injury limit of $25,000. Progressive defended Hollingshead in the Underlying Suit and paid its $25,000 limit to

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

Plaintiff.

Plaintiff and Hollingshead entered an agreement under which, among other things, (1) they agreed to submit Plaintiff's tort claim against Hollingshead to arbitration; (2) Hollingshead assigned to Plaintiff his rights against Defendant for collection of the judgment to be obtained in the underlying lawsuit;[2] and (3) Plaintiff agreed not to collect any future judgment from Hollingshead's personal assets.  Following an arbitration award, judgment was entered for Plaintiff against Hollingshead in the amount of $508,150.45.

By letter dated January 5, 2021, Defendant's attorneys were provided with a copy of the Complaint and Jury Demand in Plaintiff's suit against Hollingshead, and a request was made for Defendant to advise if it would provide coverage to Hollingshead under the insurance policy issued by Defendant to MAG.  By letter dated February 12, 2021, Defendant's attorneys acknowledged receipt of Plaintiff's complaint against Hollingshead.  Defendant's attorneys advised that it was standing on its position that Hollingshead did not qualify as an insured under its policy.

At the time of the accident, MAG was insured under Commercial Package Policy No. 9336339 ("Commercial Package Policy") and Commercial Umbrella Liability Policy No. 9336342 ("Commercial Umbrella Policy") issued by Defendant.  Defendant's

---

[2] In their Agreement, Hollingshead assigned only claims for collection of the judgment. (ECF No. 29-1 at 4 ¶ 3 ("Hollingshead hereby assigns to Alspaugh all rights, title, and interest he may have in any claims against Federated for collection of the Judgment to be entered in the Underlying Lawsuit, including the right to pursue those claims in a civil action and retain proceeds from such an action as set forth below.").)  It appears as though no claim was assigned for defense of the suit.  Hollingshead was defended by his own insurer in the underlying lawsuit.  Thus, because the Court agrees with Defendant's statement that "whether a defense was requested or refused is not material" to its Motion (ECF No. 35 at 1 n.1), and Plaintiff raises no substantive arguments concerning a duty to defend (*see* ECF No. 32), the Court does not discuss any allegations concerning Defendant's alleged duty to defend.

3

Commercial Package Policy provides coverage under Auto Dealer Coverage Form CA 00 25 10 13.  Paragraph 2.b. of the "Who Is An Insured" provision of the Auto Dealer's Coverage Form, states in relevant part that the following are insureds:

> b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:
> . . .
>> (4) Your customers. However, if a customer of yours:
>>
>>> (a)   Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
>>>
>>> (b)   Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

(ECF No. 29-1 at 14.)

Plaintiff states that the liability limit of Defendant's Commercial Package Policy issued to MAG that was in effect on the date of the accident is $500,000.  (ECF No. 32 at 4 ¶ 5.)  Defendant points out that the Commercial Package Policy's "customer" provision provides minimum limits of $25,000/$50,000 for customers, rather than $500,000.  (ECF No. 35 at 1 ¶ 5.)

Defendant's Commercial Umbrella Policy's "Who Is An Insured" provision states in part:

> A. With respect to **A. EXCESS LIABILITY COVERAGES**, refer to the applicable "underlying insurance" to determine

> who is an insured.  However:
>
> 1. With respect to the ownership, maintenance, use, loading or unloading of an auto, . . . the following are not insureds even if covered by the "underlying insurance":
>
> . . .
>
> b. Any customer of yours . . . .

(ECF No. 29-1 at 18.)

The terms "you" and "your" in both policies refer to the Named Insured, which is MAG.  Plaintiff states that the Commercial Umbrella Policy issued to MAG that was in effect on the date of the accident has an occurrence limit of $25 million.  (ECF No. 32 at 4 ¶ 6.)  Defendant admits that the occurrence limit is $25 million but states that this fact is irrelevant because the Commercial Umbrella Policy's "customer" provision states that, with respect to the use of automobile, the named insured's customers are not insureds; thus no limit applies to them.  (ECF No. 35 at 2 ¶ 6.)

## III. PROCEDURAL HISTORY

On June 1, 2022, Plaintiff filed a lawsuit against Defendant in the District Court for the City and County of Denver.  (ECF No. 7.)  He alleged three claims: (1) breach of contract; (2) bad faith breach of contract; and (3) violation of Colorado Revised Statutes § 10-3-1115 and § 10-3-1116.  (*Id.*)  Defendant filed an Answer and Counterclaim for Declaratory Judgment.  (ECF No. 15.)  On July 13, 2022, Defendant removed the case to this Court pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332(a).  (ECF No. 1.)

## IV. COLORADO'S MANDATORY INSURANCE STATUTES

Under Colorado law, "[e]very owner of a motor vehicle who operates the motor

vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 6 covering the said motor vehicle. . . ." Colo. Rev. Stat. § 10-4-619(1).

Further, Colorado law provides that

> [s]ubject to the limitations and exclusions authorized by this part 6, the basic coverage required for compliance with this part 6 is legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one accident and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident.

Colo. Rev. Stat. § 10-4-620.

Finally, the Conditions and Exclusions section of the Colorado automobile insurance policy statute provides that "[t]he coverage described in section 10-4-620 may be subject to conditions and exclusions that are not inconsistent with the requirements of this part 6."  Colo. Rev. Stat. § 10-4-623(1).

## V. ANALYSIS

In the Motion, Defendant explains that its Commercial Package Policy does not cover a MAG customer if the customer has other insurance meeting the minimum requirements of applicable law.  (ECF No. 29 at 2.)  If the customer has no other insurance, or if their coverage does not meet minimum requirements, then the policy covers the customer, but only up to the amounts required by law.  (*Id.*)  Here, the customer is Hollingshead; it is undisputed that he had personal auto insurance meeting the minimum requirements of Colorado law.  (*Id.*)  Relying on a Colorado Supreme

6

Court decision, *Shelter Mutual Insurance Company v. Mid Century Insurance Company*, 246 P.3d 651 (Colo. 2011), Defendant contends that its policy fully complies with Colorado's mandatory insurance scheme because its terms guarantee that every vehicle will be operated with at least the minimum required coverage. (*Id.*) Accordingly, Defendant requests that the Court grant judgment in its favor on Plaintiff's three claims, dismiss the Complaint in its entirety, and enter judgment declaring that Defendant has no obligation to indemnify Hollingshead for the judgment entered against him in the underlying tort action. (*Id.* at 15.) Alternatively, Defendant requests that the Court declare that Hollingshead's coverage is limited to $25,000. (*Id.*)

Despite Plaintiff's arguments to the contrary, for the following reasons, the Court agrees with Defendant and finds that Hollingshead is not covered by Defendant's Commercial Package Policy or its Commercial Umbrella Policy.[3]

### A. Customer Provision Excludes Coverage for Hollingshead

As the quoted language in Part II shows, Defendant's Commercial Package Policy's "Who Is An Insured" section covers any person using, with the named insured's (MAG's) permission, an auto that is owned, hired, or borrowed by the named insured. (ECF No. 29-1 at 14.) However, the customer provision further explains that MAG's customers are not insured unless they have no other insurance meeting the

---

[3] Although Plaintiff mentions Defendant's Commercial Umbrella Policy in his response, he does not substantively argue that it provides coverage in this matter. (*See* ECF No. 32.) "Issues not raised in the opening brief are deemed abandoned or waived." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997). Defendant confirms as much in its reply. (ECF No. 35 at 10 ("Plaintiff has provided no opposition" to Defendant's arguments that "the 'customer' exclusion in its Commercial Umbrella Policy applies.").)

Nonetheless, the Court has reviewed the "Who Is An Insured" provision in Defendant's Commercial Umbrella Policy and concludes that its plain language excludes Hollingshead, who is "any customer," from coverage. (ECF No. 29 at 5.) Thus, the Court will discuss the Commercial Umbrella Policy no further.

7

requirements of the applicable financial responsibility law. (*Id.*) And if they do not have such insurance, it states that the policy covers the customer only in an amount necessary to meet those minimum requirements. If a customer has other available insurance, then that individual is an insured only for the amount that the applicable financial responsibility law limits exceed the limit of the customer's other insurance.

Here, it is undisputed that at the time of the accident, Hollingshead was a MAG customer who was test driving a vehicle owned by MAG with MAG's permission. Further, Hollingshead had insurance that met the minimum requirements of Colorado's financial responsibility law through his Progressive personal auto policy, which had a bodily injury limit of $25,000. Given these undisputed facts, the Court concludes that Hollingshead was excluded from coverage under Defendant's Commercial Package Policy.[4]

## B. The Policy Is Consistent with Colorado's Mandatory Insurance Statutes

Plaintiff does not dispute the foregoing contract interpretations of Defendant's Commercial Package Policy. Rather, he argues that the customer provision, also referred to as an "escape clause," is contrary to Colorado's compulsory insurance laws and underlying public policy. (ECF No. 32 at 5.) He contends that as the insurer of the vehicle involved in the collision, Defendant is required by Colorado law to extend liability coverage to permissive users even if they have their own complying coverage. (*Id.*) Further, he asserts that Defendant cannot shift that legal obligation to the operator's

---

[4] In the alternative, Defendant argues that "[a]t most, the customer provision could only be deemed to be 'inconsistent' with Colorado's minimum coverage of $25,000. The customer exclusion would be valid and enforceable for any amount of coverage that exceeds the minimum $25,000. Thus, arguing solely in the alternative, Federated is entitled to a declaration that Hollingshead's coverage is limited to $25,000." (ECF No. 29 at 12 n.2.) Because the Court concludes, *infra* Part IV.B, that the customer provision is consistent with Colorado's minimum coverage requirement, it need not address Defendant's alternative argument.

insurer, and requiring that the vehicle insurer provide primary coverage is consistent with the legislative purposes of Colorado's compulsory insurance laws.  (*Id.*) Accordingly, he argues that "[p]olicy provisions that attempt to dilute, restrict or condition mandated coverage are void and unenforceable."  (*Id.* at 7.)

Further, Plaintiff argues that Defendant's "escape clause clearly narrows the class of insureds to whom it provides the full extent of coverage, particularly in the case of permissive users like Hollingshead who have their own insurance."  (ECF No. 32 at 8.)  Thus, Plaintiff argues, Defendant's policy provision is "invalid just like the policy provision in *Finizio* [*v. American Hardware Mutual Insurance Co.*, 967 P.2d 188 (Colo. App. 1998)]."  (*Id.*)

Plaintiff heavily relies on *Finizio* for support.  In that case, a car dealership purchased insurance for its automobiles, but that insurance included an escape clause that provided coverage to the dealership's customers as long as they did not have other available insurance or if their insurance was not enough to satisfy the minimum coverage amounts required by law.  *Shelter Mutual*, 246 P.3d at 663 (citing *Finizio*, 967 P.2d at 190).  The *Finizio* court invalidated the escape clause and concluded that allowing "an insurer completely to exclude from liability coverage a certain category of permissive users because some other form of coverage exists is inconsistent with" the No–Fault Act in force at the time.  *Id*.

In 2011, the Colorado Supreme Court directly addressed these issues in *Shelter Mutual*, stating that it did "not find this line of reasoning [in *Finizio*] persuasive, however, because it conflates an automobile owner's requirement to purchase insurance with the requirement that the automobile owner's insurer always be primary."  *Shelter Mutual*,

9

246 P.3d at 663.  The Colorado Supreme Court clarified that *Finizio*'s rationale is "no more compelling because it dealt with an escape clause instead of an excess clause."  *Id.* at 664.

> Given that the purpose of Colorado's mandatory-insurance laws is to ensure that the public is covered by insurance protection, we can discern no compelling basis for treating excess clauses differently from escape clauses.  Excess clauses have been analogized to escape clauses, *Travelers Casualty & Surety Co. v. Century Surety Co.*, 118 Cal. App. 4th 1156, 13 Cal. Rptr. 3d 526, 529 (2004), and both types of clauses essentially describe different sides of the same coin: through an excess clause an insurer initially accepts liability but then tries to shift it to another insurer, while through an escape clause an insurer initially disclaims liability but then accepts it in the absence of other insurance. . . . Looking to the public policy directives we have received from our legislature, we determine that it does not matter whether an insurer shifts responsibility through an excess or an escape clause; so long as the insured remains covered, the statutory and public policy requirements have been satisfied.  [citation omitted]  Therefore, we disagree with the analysis in *Finizio* to the extent it differs from our own.

*Id.*  Additionally, the *Shelter Mutual* court considered the interaction of the different Colorado insurance statutory provisions and observed that "[t]he Colorado legislature has not only declined to assign primary status to an automobile owner's insurance company, but it has expressly given insurers the freedom to contract for conditions and exclusions that are not inconsistent with the requirements of the statutory scheme regulating automobile insurance."  *Id*. at 662 (citing C.R.S. § 10-4-623(2) (internal quotation marks omitted)).

Here, the customer provision in Defendant's Commercial Package policy is such a "condition or exclusion" contemplated by the Colorado Supreme Court in *Shelter Mutual* and the Colorado General Assembly in the current statutory insurance scheme.

The Court concludes that the customer provision is not inconsistent with §§ 10-4-619 or 10-4-620 because the policy requirements in this case have been satisfied by Hollingshead's Progressive policy which had the required $25,000 of coverage. As Defendant explains, the customer provision is consistent with Colorado's mandatory insurance statutes "because it guarantees that no MAG auto will be operated unless the minimum required coverage applies." (ECF No. 29 at 11.) Under the customer provision, the policy covers a customer up to the minimum statutory requirements, if the customer otherwise has no insurance meeting those requirements. The exclusion of coverage applies only where the customer has other insurance meeting those requirements, which Hollingshead did. Thus, the exclusion is not inconsistent with the coverage required by Colorado law, because the provision guarantees that MAG vehicles are operated with the minimum required coverage. Simply because Defendant's insurance is not the primary insurance does not change this conclusion, particularly after the Colorado Supreme Court's observations in *Shelter Mutual* on the subject, noted above and *infra*, Part V.C.

Plaintiff's argument that *Shelter Mutual* did not explicitly state that it was overruling *Finizio* is without merit. (ECF No. 32 at 11.) Although a decision of an intermediate state appellate court is not necessarily binding on questions of state law before a federal district court, it is highly persuasive authority and should be followed absent some substantial indication that the state supreme court would decide the question to the contrary. *Res. Expl. & Min., Inc. v. Itel Corp.*, 492 F. Supp. 515, 517 (D. Colo. 1980). In this case, the Court has before it such "substantial indication" from the Colorado Supreme Court in *Shelter Mutual*, where the court expressly refused to follow

11

the reasoning in *Finizio*.

Even though *Finizio* and this case deal with escape clauses, whereas *Shelter Mutual* dealt with excess clauses, the Colorado Supreme Court clearly stated that it did "not find [*Finizio*'s] line of reasoning persuasive" and that it discerned "no compelling basis for treating excess clauses differently from escape clauses." *Shelter Mutual*, 246 P.3d at 663–64.  As Defendant argues, accepting Plaintiff's position would require the Court to ignore *Shelter Mutual*'s explicit rejection of the reasoning in *Finizio*.  (ECF No. 35 at 6–10.)

Therefore, even if the Court were to agree that *Shelter Mutual* is not directly on point and did not overrule *Finizio*'s reasoning, as a federal court sitting in diversity, the Court "must follow the most recent decisions of the state's highest court," and "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007).  *Shelter Mutual* post-dates *Finizio*, is a Colorado Supreme Court opinion as opposed to a Colorado Court of Appeals opinion, and expressly disagrees with *Finizio*'s reasoning.  Accordingly, to the extent the Court must predict what the Colorado Supreme Court would do, the Court finds that the Colorado Supreme Court would determine that the customer provision is a valid and enforceable escape clause that is expressly permitted by § 10-4-623.

**C.     Public Policy Considerations**

To the extent Plaintiff argues that the Court's ruling contravenes public policy, the Court turns to the Colorado Supreme Court's observation in *Shelter Mutual* that

> [l]egislative action could prevent [insurers employing other-insurance clauses], producing "uniformity of result in determining excess and primary coverage," which would

> allow insurers, courts, and insureds to save time and resources. *See State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179 (1986)). But these public policy concerns are not before us; rather, they are properly weighed and considered by the legislature, which has the freedom to regulate the insurance industry. *See In re Estate of DeWitt*, 54 P.3d 849, 857 (Colo. 2002).

*Shelter Mutual*, 246 P.3d 651 at 664. The *Shelter Mutual* court also explicitly observed that "[t]he plain language of the statutory scheme provides no basis for reading a primary-insurer requirement into the statute, and neither does public policy" and noted that "had the General Assembly wanted to identify an owner's insurer as primary, it knew how to do so." *Id.* at 662. "An excess clause may shift liability to a different insurer, but the net result for the public is still the same—Colorado drivers are still provided with the same level of coverage." *Id.*

Here, Defendant's escape clause, rather than an excess clause as in *Shelter Mutual*, determines which insurance covers the customer, but the meaning and outcome are the same. This Court finds itself much in the same position as the Colorado Supreme Court and likewise concludes that it is the job of the Colorado legislature, not the undersigned, to regulate the insurance industry.

### D. Defendant Is Entitled to Judgment on All Claims And Its Counterclaim for Declaratory Relief

Plaintiff's claims for breach of contract, bad faith breach of contract, and statutory bad faith are all based on the allegation that Defendant incorrectly denied coverage. (ECF No. 7.) However, because the Court has found that neither of Defendant's insurance policies provided coverage to Hollingshead, the predicate allegations fail, and Defendant is entitled to summary judgment on Plaintiff's three claims. *See Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is

13

settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage") (citations omitted).

Additionally, Defendant filed a Counterclaim for Declaratory Judgment.  (ECF No. 15.)  Defendant requests declaratory judgment stating that based on the customer provision, Hollingshead is not an insured under the Commercial Package Policy because it is undisputed that at the time of the accident he was a customer who was insured by other insurance coverage meeting minimum requirements of applicable financial responsibility laws.  (*Id.* at 11.)  Based on the Court's rulings in this Order, the Court finds it appropriate to enter such declaratory judgment.[5]

## VI. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1. Defendant's Early Motion for Summary Judgment (ECF No. 29) is GRANTED;
2. Plaintiff's Complaint (ECF No. 7) is DISMISSED WITH PREJUDICE;
3. Defendant has no obligation to indemnify Hollingshead for the judgment entered against him in the underlying tort action;
4. The Clerk shall enter judgment in favor of Defendant and against Plaintiff and thereafter shall terminate this action; and
5. Each party shall bear his or its own costs and fees.

---

[5] As previously stated in this Order, the Court need not address the duty to defend or the Commercial Umbrella Policy in connection with entry of declaratory judgment for Defendant.

Dated this 18th day of August, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge